UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BALTEJ S. K.,

        Petitioner,

      v.

MINGA WOFFARD et al.,

        Respondents.

No. 1:26-cv-00413-TLN-CSK

**ORDER**

    This matter is before the Court on Petitioner Baltej S. K.'s[1] ("Petitioner") Ex-Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.)  For the reasons set forth below, Petitioner's Motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    Petitioner is a thirty-one-year-old from Rajasthan, India.  (ECF No. 2 at 10; ECF No. 2-1

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

at 17.)  Petitioner entered the United States on December 11, 2022, and was apprehended by Border Patrol the same day.  (ECF No. 2 at 10.)  Petitioner was subsequently released on parole subject to certain conditions.  (*Id.*)  Petitioner states following his release, he complied with all U.S. Immigration and Custom Enforcement ("ICE") supervision requirements.  (*Id.* at 11.)  Petitioner also filed an asylum application in June 2023 and later received employment authorization.  (*Id.* at 10; ECF No. 2-1 at 5.)  He states he has no criminal history and has continuously resided in California since his release.  (ECF No. 2 at 10.)

In early 2025, ICE informed Petitioner that his case was not appearing in the Automated Case Information system.  (*Id.* at 11.)  ICE instructed him to return to the San Jose ICE office for installation of a location-tracking application.  (*Id.*)  Petitioner states he complied with everything that was asked of him.  (*Id.*)

On October 6, 2025, Petitioner appeared at a scheduled ICE check-in and was detained without notice and without any change in circumstances.  (*Id.*)  Petitioner states he was informed he was being detained because his asylum case was not appearing online.  (*Id.*)  Petitioner was subsequently transferred to the Mesa Verde Detention Center where he remains detained.  (*Id.*)

On January 19, 2026, Petitioner filed a writ of habeas corpus.  (ECF No. 1.)  The same day, Petitioner filed a TRO challenging the constitutionality of his detention and seeking immediate release.  (ECF No. 2.)

**II.    STANDARD OF LAW**

For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III. ANALYSIS[2]

#### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his procedural due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

---

[2]    The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b); (ECF No. 2-4 at 2). *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3]    Given this, the Court does not address Petitioner's substantive due process claim at this time.

3

Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M.*, 2025 WL 2617255, at *3.

Here, Petitioner gained a liberty interest in his continued freedom when ICE elected to release Petitioner from custody. (ECF No. 2 at 7.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner states he was detained during a scheduled check-in at an ICE office without notice and without any change in circumstances. (*Id.* at 11.) Additionally, prior to his re-detainment, Petitioner had been living in California continuously and had received authorization to work. (*Id.*) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

4

procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner established a life outside of custody and was detained without notice and without any change in circumstances.  Despite that, Petitioner has now been detained since October 6, 2025, without being afforded a bond hearing.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).  Petitioner represents he has complied with all his immigration and supervision requirements and has no criminal history.  (ECF No. 2 at 7.)  Based on this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his pending asylum case than to continue to detain him. *See Hernandez*, 872 F.3d at 996 (noting that in 2017, the costs to the public of immigration detention amounted to a total daily cost of $6.5 million).  Additionally, it is not clear that Respondents have supplied Petitioner with any legitimate reason for detaining him.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted.  Accordingly, with respect to his

5

procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.   Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner states he is suffering from anxiety, sleeplessness, and emotional distress.  (ECF No. 2 at 21.)  Further, Petitioner contends he cannot practice his Sikh faith while in detention and the environment is isolating, noisy, and mentally exhausting.  (*Id.*)  In order to afford an attorney, Petitioner's family had to sell their land.  (*Id.*)  Finally, Petitioner has been detained since October 6, 2025, without a bond hearing and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors weigh in Petitioner's favor.  Therefore, the Court GRANTS Petitioner's Motion for a TRO.  (ECF No. 2.)

///

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Baltej S.K. from custody under the same conditions as he was released previously, prior to his October 6, 2025, detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.

4. Respondents are ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order.  Respondents shall file responsive papers by **Friday, January 30, 2026**.  Respondents' response shall inform the Court whether Respondents request the Court enter final judgment granting the petition for writ of habeas corpus on the merits if the Court is inclined to grant a preliminary injunction.  Petitioner may file a reply, if any, by **Monday, February 2, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov.  Petitioner shall also include a copy of the Motion for Temporary Restraining Order and the attached exhibits.  Petitioner shall file proof of such service no later than **12 p.m. on January 21, 2026.**

7

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is directed to update the docket to only list Petitioner's first name and last initials.

IT IS SO ORDERED.

Date: January 20, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8